**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 19-250 |
| | ) | |
| DONELL HIGGINBOTHAM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>OPINION</u>**

I.      Introduction

Pending before the court are a motion and renewed motion for compassionate release (ECF Nos. 134, 139) and a motion for a hearing on compassionate release (ECF No. 147) filed pro se by defendant Donell Higginbotham ("Higginbotham").   Higginbotham attached numerous exhibits to his motions, which the court reviewed.   The government filed a response, opposing relief on procedural and substantive grounds (ECF No. 143), and submitted exhibits and medical records under seal (ECF No. 146).   Higginbotham filed a reply on April 4, 2023 (ECF No. 148), and the motions are ripe for disposition.

II.      Procedural Background

In Crim. No. 19-250, Higginbotham pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement to: (1) conspiracy to distribute 5 kilograms or more of cocaine; and (2) attempt to possess 5 kilograms or more of cocaine.   The statutory mandatory minimum term of imprisonment at each count is 10 years.

In the plea agreement, Higginbotham and the government agreed that the appropriate sentence was a term of imprisonment of 10 years at each count, to run concurrent, to be followed

by 8 years of supervised release.  Higginbotham agreed to forfeit numerous items, including over $300,000 in cash.  On January 5, 2021, the court accepted the parties' plea agreement and imposed the agreed-upon sentence.  The term of imprisonment was at the low end of the advisory guideline range of 120-125 months and reflected the statutory mandatory minimum.

Higginbotham is 45 years old and is currently incarcerated at USP-Hazelton. Higginbotham explains that he is housed at SPC Hazelton, a separate camp facility.  His projected release date is June 29, 2027.  The parties did not provide any information about the current status of the COVID-19 virus at the separate camp facility.  The BOP reports no current active cases of COVID-19 among inmates or staff at USP-Hazelton or FCI-Hazelton. https://www.bop.gov/coronavirus/covid19_statistics.html, last visited April 25, 2023.

Higginbotham was vaccinated against the COVID-19 virus, receiving two doses of the Pfizer Vaccine (ECF No. 146-2).  Higginbotham did not present any evidence about the impact of his vaccination on his risk of contracting the Covid-19 virus or his risk of experiencing severe symptoms if he does get infected.  He submitted two scholarly articles about the possible effects of the COVID-19 vaccines on some patients with kidney failure and new-onset kidney diseases after COVID-19 vaccination (EC Nos. 147-3, 147-4), but did not provide any medical records or information about the effect of the COVID-19 vaccine on his own medical condition.

Higginbotham contends that he is vulnerable to severe illness and death if exposed to COVID-19 due to: (1) chronic kidney disease; (2) heart conditions/high blood pressure/hypertension; (3) overweight/obesity; (4) former smoker; and (5) substance use disorder.  Higginbotham submitted medical records, as did the government.  The medical records reflect that Higginbotham has (1) chronic kidney disease, stage 2 (mild), in remission as of 1/23/2023, his eGRF level was 58, adjusted to 69.6 (ECF No. 147-10 at 9); (2) elevated blood

pressure, for which Higginbotham is prescribed amlodipine, with a high reading of 157/110 on 2/7/2023 (ECF No. 147-10 at 3, 12); (3) a BMI of 27.6, which qualifies as overweight, but not obese (ECF No. 148-5); (4) his smoking history is self-reported; and (5) severe substance abuse disorders involving cannabis, cocaine and other hallucinogens (ECF No. 147-10 at 9).

The Centers for Disease Control ("CDC") identify the following as risk factors for COVID-19: chronic kidney disease of any stage; "possibly high blood pressure (hypertension)"; being overweight, although the "risk of severe illness from COVID-19 increases sharply with higher BMI"; a history of smoking; and substance use disorders. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited April 25, 2023.

III.    Discussion

**A. Exhaustion of administrative remedies**

The government contends that Higginbotham failed to exhaust his administrative remedies. The government concedes that Higginbotham submitted a request to the warden at FCI-Loretto, but argues that his March 1, 2022 request to the warden at USP-Hazelton (ECF No. 135-1) was never received by the Bureau of Prisons ("BOP"). Higginbotham declares that he was assigned to the camp and mailed his request to the warden on that date. Higginbotham argues that he should not be penalized for the BOP's poor recordkeeping. The court will accept Higginbotham's declaration of mailing and, therefore, the court will address Higginbotham' requests for compassionate release on the merits.

**B. Applicable Law**

Higginbotham seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. §

3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of

Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18

U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that

"[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality'

of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not
modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has
fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on the defendant's behalf or
the lapse of 30 days from the receipt of such a request by the
warden of the defendant's facility, whichever is earlier, may reduce
the term of imprisonment (and may impose a term of probation or
supervised release with or without conditions that does not exceed
the unserved portion of the original term of imprisonment), after
considering the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a
reduction; or

(ii) the defendant is at least 70 years of age, has served at
least 30 years in prison, pursuant to a sentence imposed
under section 3559(c), for the offense or offenses for which
the defendant is currently imprisoned, and a determination
has been made by the Director of the Bureau of Prisons that
the defendant is not a danger to the safety of any other
person or the community, as provided under section
3142(g);

and that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The statute sets forth a three-step analysis for district courts to utilize

to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A).  United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021) (prisoner's compassionate release motion "may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.").

Based upon the foregoing, to grant Higginbotham compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[1]

---

[1]   The factors set forth in 18 U.S.C. § 3553(a) are:

 − the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

 − the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

 − the sentencing range established by the Sentencing Commission, § 3553(a)(4);

 − any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Higginbotham bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### C. Extraordinary and Compelling Reasons

#### 1. General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary"

---

− the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

− the need to provide restitution to any victims of the offense, § 3553(a)(7).

reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." <u>United States v. Handerhan</u>, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing <u>United States v. Barberena</u>, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." <u>Id.</u> (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in <u>Adeyemi</u> explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

<u>Adeyemi</u>, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In <u>Andrews</u>, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. <u>Andrews</u>, 12 F.4th at 259. On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" <u>Id.</u>

The court in <u>Somerville</u> provided a helpful working definition:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); *see also Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### 2.  Consideration of COVID-19

In Somerville, the court concluded that "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Somerville, 2020 WL 2781585 at *4 (emphasis added). That test must be modified in light of the COVID-19 vaccinations that are occurring.  Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection.  United States v. Rhodes, No. CR 15-23, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021).

The court, therefore, needs to determine whether Higginbotham set forth extraordinary and compelling reasons for his compassionate release based upon his asserted medical conditions and the situation at Hazelton – taking into account his vaccination. Higginbotham has the burden to produce evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical conditions and age and the protective effects of the vaccine; and (2) he faces a non-speculative risk of

contracting or recontracting the COVID-19 virus, considering both the risk of exposure at SPC Hazelton and the preventative effects of the vaccine.

> a. Whether Higginbotham faces a uniquely high risk of grave illness or death from being infected by the COVID-19 virus

In his motion, Higginbotham contends that he has a uniquely high risk of grave illness or death from the COVID-19 virus due to his preexisting medical conditions. Higginbotham is only 45 years old, but he did demonstrate that he has several risk factors that would indicate he may face a uniquely serious threat from the COVID-19 virus. The medical records, however, do not fully support the claimed severity of Higginbotham's conditions. There is no evidence that the prison environment exacerbates Higginbotham' conditions and it appears that he would experience the same symptoms if he were released. Under the present circumstances, Higginbotham' medical conditions do not warrant compassionate release. *See United States v. Jones*, No. CR 14-463, 2021 WL 3732877, at *3 (D.N.J. Aug. 24, 2021) (denying compassionate release where defendant presented conclusory assertions concerning the challenges posed by Covid-19, but did not submit medical records or an affidavit of a physician based on personal knowledge of his medical condition).

The court concludes that, based on this record, because Higginbotham is now vaccinated he cannot establish that he faces an extraordinary or compelling risk from the COVID-19 virus. "Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.' Vaccines are particularly effective at preventing 'severe illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an

extraordinary and compelling reason to grant compassionate release).  In <u>Singh</u>, the court recognized that the inmate in that case had underlying medical conditions which ordinarily would have established grounds for compassionate release.  The court concluded, however, that vaccination mitigated those risks.  <u>Id.</u> at *3.  The court's conclusion was "in accord with the vast majority of courts that have considered this issue."  <u>Id.</u> (citations omitted).  In <u>United States v. Doan</u>, 2022 WL 1551830 (3d Cir. May, 17, 2022), the Third Circuit Court of Appeals affirmed denial of compassionate release, even though the inmate had medical conditions associated with severe illness or death from COVID-19, where the inmate previously contracted COVID-19, fully recovered, and was later vaccinated.

In other words, the decisions teach that because Higginbotham is vaccinated, he faces a reduced risk that: (1) he will contract the COVID-19 virus; and (2) if he is infected, he will experience severe symptoms.  In <u>Singh</u>, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted and denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection.  <u>Id.</u> at *4.

In this case, Higginbotham similarly failed to meet his burden to demonstrate that he continues to face a substantial risk from the COVID-19 virus despite his vaccination.  While there are certainly still unknowns about the vaccine administered to Higginbotham, including its potential impact on persons with chronic kidney disease, it appears that Higginbotham's risks of (1) being infected by COVID-19, and (2) suffering severe illness if he is infected, are speculative because of his vaccination.  On this record, the court concludes that Higginbotham failed to meet his burden to show extraordinary and compelling reasons for compassionate release due to the COVID-19 virus.

b.   Whether Higginbotham faces an actual, non-speculative risk of contracting the COVID-19 virus

As noted above, there is no evidence in this record of any current cases of COVID-19 infection among the inmates at any of the facilities at Hazelton.  The court recognizes that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison, although it may be somewhat easier at the camp.  On the other hand, many inmates (including Higginbotham) and staff members have now been vaccinated for COVID-19. Vaccination of all or substantially all inmates and staff will limit the spread of the virus and reduce the risk of exposure.  As noted above, even if Higginbotham is exposed to the COVID-19 virus, it appears that he will be far less likely to be infected or suffer serious symptoms due to his vaccination.  In sum, it would be speculative at this point for the court to conclude there is an actual risk that Higginbotham, after his vaccination, will be infected by the COVID-19 virus at SPC Hazelton.

c.   Conclusion about COVID-19

Because Higginbotham received the two doses of the Pfizer vaccine, the court cannot find, on this record, that he met his burden to establish that he is at "*uniquely* high risk" of being infected with the COVID-19 virus or experiencing serious illness if he is infected with the COVID-19 virus.  To conclude otherwise would be speculative, based upon the record before this court.  In sum, Higginbotham did not show an extraordinary and compelling reason for his compassionate release.  In light of this conclusion, the court need not address the § 3553(a) factors, but notes Higginbotham's exemplary efforts to rehabilitate himself while in custody. The court encourages him to continue with his educational, vocational and personal development.  Higginbotham's family relationships and support will enhance his ability to reenter society and be successful.  The court recognizes and compliments Higginbotham on his

"360-degree turnaround."

### V. Conclusion

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Higginbotham did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment. His motions for compassionate release (ECF Nos. 134, 139) will, therefore, be denied. The denial is without prejudice in the event Higginbotham' circumstances or the conditions at his place of confinement change. The motion for a hearing on compassionate release (ECF No. 147) will be denied as moot.

An appropriate order will be entered.

Dated:        May 3, 2023.

                                                  BY THE COURT:


                                                  s/ Joy Flowers Conti
                                                  Joy Flowers Conti
                                                  Senior United States District Judge